Juan E. Monteverde (admitted *pro hac vice*, NY Reg. No. 4467882)
MONTEVERDE & ASSOCIATES PC
The Empire State Building
350 Fifth Avenue, Suite 4740
New York, New York 10118
Tel: (212) 971-1341
jmonteverde@monteverdelaw.com

David E. Bower (SBN 119546)
MONTEVERDE & ASSOCIATES PC
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
dbower@monteverdelaw.com

*Counsel for Co-Lead Plaintiffs and
Class Counsel*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IN RE AIMMUNE THERAPEUTICS, INC. SECURITIES LITIGATION | Master File No. 3:20-CV-06733-MMC<br><br>**CO-LEAD PLAINTIFFS' NOTICE OF MOTION, MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO CO-LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. § 78u-4(a)(4), AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: July 18, 2025<br>Time: 9:00 a.m.<br>Court: Courtroom 7, 19th Floor<br>Judge: Hon. Maxine M. Chesney |

## **TABLE OF CONTENTS**

NOTICE OF MOTION...................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.   INTRODUCTION ................................................................................................... 1

II.  HISTORY OF THE LITIGATION AND FACTUAL BACKGROUND.............................. 5

III. THE REQUESTED FEE IS FAIR AND REASONABLE ................................................ 6

   A. A Reasonable Percentage of the Fund is the Appropriate Method for Awarding
      Attorneys' Fees in a Common Fund Case Like This .......................................6

   B. The Request for Attorneys' Fees in the Amount of One-Third of the Settlement Fund is
      Reasonable .......................................................................................................7

      1. Class Counsel Achieved an Excellent Result for the Settlement Class ............... 8

      2. The Litigation Was Risky, Uncertain, and Highly Complex ............................ 10

      3. The Skill Required and Quality of the Work...................................................... 14

      4. The Requested Fee Is Consistent with Awards in Similar Cases..................... 15

      5. The Contingent Nature of the Fee, the Financial Burden Carried by Class
         Counsel, and the Opportunity Cost of Bringing Suit ......................................... 18

      6. The Reaction of the Class ................................................................................... 20

      7. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee... 20

IV. CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED
    ........................................................................................................................... 22

V.  PLAINTIFFS' REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD
    ALSO BE APPROVED ........................................................................................ 23

VI. CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
　572 F.3d 221 (5th Cir. 2009) ........................................................... 11

*Andrews v. Plains All Am. Pipeline L.P.*,
　2022 U.S. Dist. LEXIS 172183 (C.D. Cal. Sept. 20, 2022) ........................... 16

*Bailey v. Kinder Morgan G.P., Inc.*,
　No. 18-cv-03424-TSH, 2020 U.S. Dist. LEXIS 176922 (N.D. Cal. Sept. 25, 2020) ............ 15

*Baird v. BlackRock Institutional Tr. Co.*,
　2021 U.S. Dist. LEXIS 212886 ........................................................... 7

*Baum v. Harman Int'l Indus.*,
　575 F. Supp. 3d 289 (D. Conn. 2021) ................................................... 12

*Bellinghausen v. Tractor Supply Co.*,
　306 F.R.D. 245 (N.D. Cal. 2015) ........................................................ 24

*Boeing Co. v. Van Gemert*,
　444 U.S. 472 (1980) ........................................................................ 6

*Booher v. Jetblue Airways Corp.*,
　No. 4:15-cv-01203-JSW, 2023 U.S. Dist. LEXIS 71342 (N.D. Cal. Mar. 24, 2023) ........ 7, 15

*Buccellato v. AT & T Operations, Inc.*,
　2011 U.S. Dist. LEXIS 85699 (N.D. Cal. June 30, 2011) ............................... 22

*Campbell v. Transgenomic, Inc.*,
　No. 4:17-CV-3021, 2020 U.S. Dist. LEXIS 97063 (D. Neb. June 3, 2020) ............... 17

*Churchill Vill., L.L.C. v. GE*,
　361 F.3d 566 (9th Cir. 2004) ........................................................... 20

*Corzine v. Whirlpool Corp.*,
　2019 U.S. Dist. LEXIS 223341 (N.D. Cal. Dec. 31, 2019) ............................ 22

*Davis v. Yelp, Inc.*,
　2023 U.S. Dist. LEXIS 40323 (N.D. Cal. Jan. 27, 2023) ............................... 16

*Deaver v. Compass Bank*,
　2015 U.S. Dist. LEXIS 166484 (N.D. Cal. Dec. 11, 2015) ........................... 18-19

*Denton v. Pennymak Loan Servs., LLC*,
　252 F. Supp. 3d 504 (E.D. Va. 2017) ................................................... 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
　No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115 (N.D. Cal. Mar. 17, 2017) ............ 8

*Farrell v. Bank of Am. Corp., N.A.*,
  827 F. App'x 628 (9th Cir. 2020) ........................................................................ 21

*Fleming v. Impax Laby's Inc.*,
  2022 U.S. Dist. LEXIS 125595 (N.D. Cal. July 15, 2022) .................................. 21

*Grace v. Apple, Inc.*,
  2021 U.S. Dist. LEXIS 66294 (N.D. Cal. Mar. 31, 2021) .................................. 23

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) .................................................................................. 23

*Hefler v. Wells Fargo & Co.*,
  2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 18, 2018),
  *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ...................... 21, 8, 10, 20

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................ 8

*Hopkins v. Stryker Sales Corp.*,
  No. 11-CV-02786-LHK, 2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) .............. 22

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) .................................. 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................ 6, 7

*In re Capacitors Antitrust Litig.*,
  2018 U.S. Dist. LEXIS 169764 (N.D. Cal. June 27, 2017) .......................... 6, 7, 22

*In re Capacitors Antitrust Litig.*,
  2023 U.S. Dist. LEXIS 37407 (N.D. Cal. Mar. 6, 2023) .................................... 16

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 U.S. Dist. LEXIS 121886 (N.D. Cal. July 22, 2019) ................ 5, 9-10, 12, 25

*In re Facebook Biometric Info. Priv. Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. 2021) .......................................................... 16, 22

*In re HP Inkjet Printer Litig.*,
  716 F.3d 1173 (9th Cir. 2013) ............................................................................ 7

*In re Lidoderm Antitrust Litig.*,
  2018 U.S. Dist. LEXIS 162425 (N.D. Cal. Sept. 20, 2018) .............................. 16

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................................ 15

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
   768 F. App'x 651 (9th Cir. 2019) ................................................................. 6

*In re NCAA Ath. Grant-In-Aid Cap. Antitrust Litig.*,
   2017 U.S. Dist. LEXIS 201108 (N.D. Cal. Dec. 6, 2017)................................ 19

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ *passim*

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................... 25, 24

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .......................................................... 10, 15, 16

*In re Resolute Energy Corp. Sec. Litig.*,
   No. 19-77-RGA, 2021 U.S. Dist. LEXIS 19193 (D. Del. Feb. 1, 2021) ............... 12

*In re Tesla Inc. Sec. Litig.*,
   2023 U.S. Dist. LEXIS 103682 (N.D. Cal. Jun. 14, 2023) .................................. 19

*In re Tesla, Inc. Sec. Litig.*,
   2022 U.S. Dist. LEXIS 88609 (N.D. Cal. Apr. 1, 2022) .................................... 19

*In re Verifone Holdings, Inc. Sec. Litig.*,
   2014 U.S. Dist. LEXIS 20044 (N.D. Cal. Feb. 18, 2014) .................................. 22

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ..................................................................... 18

*In re Zynga Sec. Litig.*,
   No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015) .............. 12

*Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490, 2019 U.S. Dist. LEXIS 180474, at *36 (C.D. Cal. Oct. 10, 2019) ........... 15

*Kelly v. Wengler*,
   822 F.3d 1085 (9th Cir. 2016) .................................................................. 22

*Khoja v. Orexigen Therapeutics*,
   No. 15cv00540-JLS-AGS, 2021 U.S. Dist. LEXIS 230105 (S.D. Cal. Nov. 30, 2021) ... 21, 23

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) .......................... 2

*Mauss v. NuVasive, Inc.*,
   No. 13cv2005 JM (JLB), 2018 U.S. Dist. LEXIS 206387 (S.D. Cal. Dec. 5, 2018) ............ 10

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970) ............................................................................... 12

*Morris v. Lifescan, Inc.*,
     54 Fed. Appx. 663 (9th Cir. 2003) ............................................... 15

*Murray v. Earthlink Holdings Corp.*,
     No. 4:18-cv-00202-JM, 2025 U.S. Dist. LEXIS 26525 (E.D. Ark. Feb. 6, 2025) ................ 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
     221 F.R.D. 523 (C.D. Cal. 2004) ............................................... 20

*Ochoa v. McDonald's Corp.*,
     2016 U.S. Dist. LEXIS 157302 (N.D. Cal. Nov. 14, 2016) ................. 23

*Richardson v. THD At-Home Servs.*,
     2016 U.S. Dist. LEXIS 46784 (E.D. Cal. Apr. 5, 2016) ..................... 14

*Rodriguez v. Nike Retail Servs.*,
     No. 14-cv-01508-BLF, 2022 U.S. Dist. LEXIS 15413 (N.D. Cal. Jan. 27, 2022)................. 17

*Rodriguez v. W. Publ'g Corp.*,
     563 F.3d 948 (9th Cir. 2009) ................................................... 24

*Romero v. Producers Dairy Foods, Inc.*,
     No. 1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14, 2007) .......... 15-16

*Scott v. ZST Digit. Networks, Inc.*,
     2013 U.S. Dist. LEXIS 197940 (C.D. Cal. 2013) ........................... 10-11

*Singer v. Becton Dickinson & Co.*,
     2010 U.S. Dist. LEXIS 53416 (S.D. Cal. 2010) ............................. 15

*Six Mexican Workers v. Ariz. Citrus Growers*,
     904 F.2d 1301 (9th Cir. 1990) ................................................. 21

*Stanger v. China Elec. Motor, Inc.*,
     812 F.3d 734 (9th Cir. 2016) .................................................. 19

*Staton v. Boeing Co.*,
     327 F.3d 938 (9th Cir. 2003) .................................................. 24

*Todd v. STAAR Surgical Co.*,
     No. CV 14-5263 MWF (GJSx),
     2017 U.S. Dist. LEXIS 176183 (C.D. Cal. Oct. 24, 2017)............................ 24-25

*Va. Bankshares v. Sandberg*,
     501 U.S. 1083 (1991) ........................................................... 12

*Vataj v. Johnson*,
     2021 U.S. Dist. LEXIS 75879 (N.D. Cal. Apr. 20, 2021) ................... 9

*Vataj v. Johnson*,
  2021 U.S. Dist. LEXIS 214678 (N.D. Cal. Nov. 5, 2021) ...................................................... 7

*Vincent v. Hughes Air W., Inc.*,
  557 F.2d 759 (9th Cir. 1977) ........................................................................................... 6

*Vinh Nguyen v. Radient Pharms. Corp.*,
  2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) ...................................................... 12

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .............................................................................. 6, 7, 21

*Wing v. Asarco Inc.*,
  114 F.3d 986 (9th Cir. 1997) ........................................................................................... 15

*Wininger v. SI Mgmt. Ltd. P'ship*,
  301 F.3d 1115 (9th Cir. 2002) .................................................................................. 7, 17

*Winters v. Two Towns Ciderhouse, Inc.*,
  No. 20-cv-00468-BAS-BGS, 2021 U.S. Dist. LEXIS 89872 (S.D. Cal. May 11, 2021) ....... 22

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................... 7, 13, 24

**Other Authorities**

Cornerstone Research, *Shareholder Litigation Involving Acquisition of Public Companies, Review of 2015 and 1H 2016 M&A Litigation* (2016) .......................................................... 2

Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, NERA Economic Consulting, (Jan. 22, 2025) ............................2, 10

Kevin LaCroix, The D&O Diary, *Rare Securities Class Action Lawsuit Trial Results in Partial Verdict for Plaintiffs* (Feb. 5, 2019) ........................................................................... 13, 19

L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2022 Review and Analysis*, Cornerstone Research (2023) ........................................................................................10

*Newberg on Class Actions* § 14.6 (4th ed. 2007) ...................................................................2, 16

1

<u>**NOTICE OF MOTION**</u>

2

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3    PLEASE TAKE NOTICE that, on July 18, 2025, at 9:00 a.m., or as soon thereafter as counsel

4    may be heard, before the Honorable Maxine M. Chesney, United States District Judge, at the United

5    States Courthouse, United States District Court, Northern District of California, 450 Golden Gate Ave.,

6    San Francisco, California, Class Representatives Bruce Svitak and Cecelia Pemberton ("Class

7    Representatives" and, along with Co-Lead Plaintiff Barbara Svitak, "Plaintiffs")[1] and Class Counsel,

8    Monteverde & Associates PC ("M&A") and Kahn Swick & Foti, LLC ("KSF," and together, "Class

9    Counsel"), will and hereby do move for entry of an Order awarding attorneys' fees and providing for

10   payment of litigation expenses and service awards to Plaintiffs.

11   This Motion is supported by the following Memorandum of Points and Authorities, the

12   accompanying Declaration of Juan E. Monteverde ("Monteverde Decl.") and the exhibits thereto, the

13   previous filings in this case, and such other and further representations as may be made by counsel at any

14   hearing on this matter.

15

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

16   1.    Whether the Court should approve as fair and reasonable Class Counsel's application for

17   attorneys' fees in the amount of one-third of the Settlement Amount ($9,166,667), and reimbursement of

18   expenses of $325,088.72, plus all interest accrued thereon.

19   2.    Whether the Court should award Plaintiffs $5,000 each ($15,000 total) for their time and

20   expenses incurred in representing the Class.

21

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

22   **I.    <u>INTRODUCTION</u>**

23   As compensation for their significant efforts in this contingent litigation over more than four years,

24   Class Counsel respectfully request that the Court award attorneys' fees of one-third of the Settlement

25   Amount, plus the interest earned thereon. A one-third fee award is warranted in this case because: (1) the

26

27   ---
     [1]    All capitalized terms not defined herein have the same meanings as in the Stipulation of
     Settlement dated January 17, 2025 ("Stipulation"). ECF No. 244-1.

28

1  Settlement is an *exceptional* result that represents a "large sum of money" for Aimmune shareholders

2  (ECF No. 253, Preliminary Approval Transcript, at 3); (2) the Settlement was reached at an advanced

3  procedural stage and after more than **four years** of risky, contingent, and uncompensated litigation efforts

4  and more than $325,088.72 in unreimbursed expenses; and (3) the requested award is squarely in line

5  with fee awards in other complex class actions and specifically in Section 14 merger class actions –

6  especially in light of the advanced procedural posture of this case – and represents a 1.59x multiplier,

7  which is on the low-end of the range of multipliers that are routinely found to be reasonable in this District

8  in securities class actions. *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 U.S. Dist. LEXIS

9  11149, at *17 (N.D. Cal. Feb. 2, 2009) ("'fee awards in class actions average around one-third of the

10  recovery'") (quoting *Newberg on Class Actions* § 14.6 (4th ed. 2007)).

11      <u>**The Settlement is an *exceptional* result.**</u> Class Counsel have secured a **$27,500,000** settlement

12  for the Settlement Class in this Section 14 merger litigation. This recovery is, (1) to the best of Class

13  Counsel's knowledge, the only settlement of a Section 14 merger/acquisition action where the target

14  company was subsequently written off as nearly worthless by the acquirer *during the pendency of the*

15  *action*; (2) at the top of the range of all Section 14 merger/acquisition settlements (despite this write

16  off); and (3) nearly *two times* the median securities settlement in "standard" (*i.e.*, not "merger

17  objection" cases) in 2024.[2] Procuring the sizeable Settlement despite the difficulties of proving Section

18  14 damages – coupled with an emerging and challenging body of law on these claims – is a testament to

19  Plaintiffs' and Class Counsel's efforts.

20      Indeed, monetary recoveries in post-merger actions like this are "relatively rare"[3] because

21  such actions face unique hurdles to proving economic loss, as shareholders received a premium over

22  
23  [2] *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, NERA Economic Consulting, (Jan. 22, 2025), available at
24  https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf. The report notes that the median settlement value was $14 million in
25  2024, and that the inflation-adjusted median settlement value ranged from $9 million to $14 million in 2021-2023. *Id.* at 1, 23.
26  [3] Cornerstone Research, *Shareholder Litigation Involving Acquisition of Public Companies, Review of 2015 and 1H 2016 M&A Litigation*, at p. 5 (2016), available at https://securities.stanford.edu/research-

27  
28  

MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO CO-LEAD PLAINTIFFS
Case No. 3:20-CV-06733-MMC

the stock's trading price in a merger after a sales process during which the corporation's value was vetted by third parties. Accordingly, even if Plaintiffs prevailed on liability, loss causation presented challenges in this case that far exceed the obstacles facing plaintiffs in more frequently litigated Rule 10b-5 cases, which seek losses incurred during a stock price drop. Here, Plaintiffs' loss causation theory was that shareholders were misled into approving an acquisition that undervalued Aimmune, notwithstanding the facts that (1) the merger consideration represented a *174% premium* over Aimmune's stock price prior to the Merger, (2) there were no higher offers on the table, and (3) perhaps most compelling, Nestle sold Aimmune's primary product at a substantial loss and essentially **wrote off the value of the acquisition while this case was pending** – a fact that, if admitted, would likely have been fatal to Plaintiffs' case. Simply put, Plaintiffs and Class Counsel faced the very real prospect of prevailing in proving liability (which presented its own challenges), only to have the Class receive nothing if the Court or a jury agreed with Defendants and their experts regarding loss causation/damages.[4]

Moreover, the risk of appeal was greater here than in other cases. As the Court may recall, after this action survived Defendants' initial motion to dismiss based in part on a recent Ninth Circuit holding that differentiated between actions based on negligence and fraud, Defendants filed a Rule 12(c) motion in which they cited that same Ninth Circuit opinion for the proposition that it invalidated the private right of action under Section 14(e). ECF 85. Although this Court disagreed, Defendants then sought leave to challenge that ruling and the private right of action in general via interlocutory appeal. ECF 96, 110. Had Plaintiffs obtained a favorable judgment at trial, it is virtually certain that Defendants would have tried for a third time to contest the private right of action, likely to the Supreme Court.

Despite these serious factual and legal challenges, Class Counsel obtained a "large sum of money" for Aimmune shareholders: $27.5 million in the aggregate, or ~$0.60 per share. This Settlement is not simply in line with many other Section 14 "merger projection challenge" case settlements in both the aggregate and on a per share basis – __it is superior to them__. *See, e.g., Karri v. Oclaro, Inc., et al.,*

reports/1996-2016/Shareholder-Litigation-Involving-Acquisitions-of-Public-CompaniesReview-of-2015-and-1H-2016-MA-Litigation.pdf.

[4]    *See* ECF Nos. 162 (Defendants' Motion for Summary Judgment); 163 (Defendants' Motion to Exclude in Part, Expert Report and Testimony of William Jeffers).

Case No. 3:18-03435 (N.D. Cal. 2024) ($15.25 million, $0.09 per share recovery); *In re Envision Healthcare Corp.*, No. 18-1068-RGA (D. Del.) ($17.4 million, $0.14 per share recovery); *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*, No. 16-cv-01756-YY (D. Or. 2021) ($21 million, $0.40 per share recovery); *accord* Monteverde Decl., Ex. 1 (summary of recent comparable Section 14 class settlements). The Settlement is, simply put, an excellent result for the Class.

      **<u>The Settlement was reached after more than *four years* of litigation, at an advanced procedural stage, and close to trial</u>**. The Settlement was not reached until **nine weeks** before trial was set to start and after **more than four years** of hard-fought litigation over a claim on which not a single case has gone to trial this century. In that time, Class Counsel did virtually everything that can be done in a case before trial. They:  (i) conducted a detailed investigation into the claims asserted and drafted an amended complaint; (ii) successfully opposed a 12(b)(6) motion to dismiss; (iii) successfully opposed a Rule 12(c) motion for judgment on the pleadings and a motion for leave to seek an interlocutory appeal; (iv) won a motion for class certification; (v) extensively consulted with a valuation expert and obtained an expert report on damages and loss causation; (vi) drafted and responded to written discovery requests; (vii) obtained and analyzed over 313,000 pages of documents produced by Defendants and third parties (including e-mails, board materials, financial data and projections, analyst reports, and other Merger-related documentation); (viii) conducted **19 depositions**, both fact and expert; (ix) prepared and mailed surveys to approximately 2,104 potential class members regarding the importance of the facts at issue in the case to the reasonable investor; (x) fully briefed a partial motion for summary judgment and an opposition to Defendants' motion for summary judgment; (xi) fully briefed a *Daubert* motion to limit the testimony of Defendant's expert and an opposition to Defendants' motion to limit Co-Lead Plaintiffs' expert; and (xii) participated in a fulsome mediation process with an experienced mediator. *See generally* Monteverde Decl. Simply put, throughout the entire case, Class Counsel have exhibited the diligence, hard work, and skill that justifies the requested fee, and the fee is fair and reasonable in light of Class Counsel's substantial efforts on behalf of the Class and the significant risks they undertook in this Section 14 merger litigation.

**The requested one-third award is common in class actions and represents a 1.59x multiplier, which is squarely in line with other precedent awards.** In litigating this case over the last four years, Class Counsel expended substantial resources, including more than 7,356 hours in professional time and $325,088.72 in unreimbursed expenses, without any assurance of recovery in a field that is notoriously risky. While significant additional time will be spent in seeking final approval and administering the settlement, Class Counsel's current lodestar is already $5,748,037.50, and a one-third fee (of $9,166,667) therefore represents a 1.59x multiplier to the time that Class Counsel has already expended *to date*. As discussed below, a fee request of one-third of the Settlement Amount and a multiplier of less than 2x are both squarely in line with fees routinely granted in complex class actions and specifically in Section 14 merger class actions such as this – especially in light of the advanced procedural posture of this case.

**The requested expenses and incentive awards are likewise reasonable.**

Finally, as outlined below, Class Counsel's unreimbursed expenses are reasonable, and Plaintiffs' requested service awards are likewise "presumptively reasonable," *In re Extreme Networks, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 121886, at *34 (N.D. Cal. July 22, 2019), in line with the amounts courts in the Ninth Circuit have approved in similar cases, and fully supported by Plaintiffs' efforts and the law, and both should likewise be approved.

## II.    HISTORY OF THE LITIGATION AND FACTUAL BACKGROUND

In accordance with this District's Procedural Guidance for Class Action Settlements ("Northern District Guidelines"), the relevant procedural history and facts will be set out in Plaintiffs' forthcoming memorandum in support of final approval of the Settlement, which will be filed on or before June 27, 2025, in accordance with the Court's Order Preliminarily Approving Settlement (ECF 251), and are thus not repeated here, but are incorporated herein.[5]   A similar summary of certain pertinent facts and background may also be found in Co-Lead Plaintiffs' Motion for Preliminary Approval of Settlement and

---

[5]    *See* Northern District Guidelines, Final Approval ¶2 ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval.").

1    Memorandum of Points and Authorities in Support Thereof. ECF 243.

2    III.    **THE REQUESTED FEE IS FAIR AND REASONABLE**

3           A.    A REASONABLE PERCENTAGE OF THE FUND IS THE APPROPRIATE METHOD FOR
                  AWARDING ATTORNEYS' FEES IN A COMMON FUND CASE LIKE THIS

4           Well-established Supreme Court precedent provides that "a litigant or a lawyer who recovers a

5    common fund for the benefit of persons other than himself or his client is entitled to a reasonable

6    attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Under

7    the common fund doctrine, "a private plaintiff, or his attorney, whose efforts create, discover, increase or

8    preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his

9    litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977);

10   *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,768 F. App'x 651, 653 (9th

11   Cir. 2019). This Court has also noted that "'[t]he use of the percentage-of-the-fund method in common-

12   fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the

13   Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of

14   plaintiffs' counsel.'" *In re Capacitors Antitrust Litig.*, 2018 U.S. Dist. LEXIS 169764, at *43 (N.D. Cal.

15   June 27, 2017) (Donato, J.) (citation omitted).

16          While courts have discretion to employ either the percentage of recovery or lodestar method, *In

17   re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011), the Ninth Circuit has

18   *consistently* approved the use of the percentage method in common fund cases. *See, e.g.*, *Vizcaino v.*

19   *Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002); *see also In re Omnivision Techs., Inc.*, 559 F.

20   Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("use of the percentage method in common fund cases appears to

21   be dominant"); *Capacitors*, 2018 U.S. Dist. LEXIS 169764, at *2 ("The percentage-of-the fund method

22   is *preferred* when counsel's efforts have created a common fund for the benefit of the class.") (emphasis

23   in original).

24          The rationale for compensating counsel on a percentage basis in common fund cases is grounded

25   on principles of equity and fairness. "[C]ourts try to…[tie] together the interests of class members and

26   class counsel" by "teather[ing] the value of an attorneys' fees award to the value of the class recovery….

The more valuable the class recovery, the greater the fees award…[a]nd vice versa." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). Use of the percentage-of-recovery method is particularly appropriate in common fund cases such as this because "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942; *Baird v. BlackRock Institutional Tr. Co.*, 2021 U.S. Dist. LEXIS 212886, at *24-*25 (N.D. Cal. Nov. 3, 2021) (applying percentage of the fund method and lodestar crosscheck); *Vataj v. Johnson*, 2021 U.S. Dist. LEXIS 214678, at *23 (N.D. Cal. Nov. 5, 2021) (same). Finally, but importantly, the PSLRA also specifically contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses that constitute "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *accord In re Am. Apparel, Inc. S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, at *66 (C.D. Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'").

**B.    THE REQUEST FOR ATTORNEYS' FEES IN THE AMOUNT OF ONE-THIRD OF THE SETTLEMENT FUND IS REASONABLE**

"Courts in the Ninth Circuit applying the 'percentage of the fund' approach use a twenty-five percent benchmark." *Capacitors*, 2018 U.S. Dist. LEXIS 169764, at *44. Importantly, though, **this benchmark is merely "a starting point for analysis,"** *Vizcaino*, 290 F.3d at 1048, and can "be adjusted" based on "relevant factors" – including, importantly, the "length and complexity of litigation and degree of success." *Wininger v. SI Mgmt. Ltd. P'ship*, 301 F.3d 1115, 1127 (9th Cir. 2002). **As a result, "in most common fund cases, the award exceeds that benchmark."** *Omnivision*, 559 F. Supp. 2d at 1047; *see also Booher v. Jetblue Airways Corp.*, No. 4:15-cv-01203-JSW, 2023 U.S. Dist. LEXIS 71342, at *3 (N.D. Cal. Mar. 24, 2023) (same, noting pertinent factors for deviating from the 25% benchmark "include the result obtained for plaintiffs, quality of representation, complexity of the issues, risk of nonpayment assumed by counsel, reaction of the class to the settlement, and lodestar comparison."); *Vataj*, 2021 U.S. Dist. LEXIS 214678, at *25 (same, noting relevant factors include "the contingent nature of the fee and the financial burden carried by the plaintiff; and [] awards made in similar cases").

To determine what constitutes a reasonable award under the percentage-of-recovery method, and thus whether an upward adjustment to the "starting point" benchmark is warranted, courts in the Ninth Circuit consider the following factors:

> (1) The results achieved; (2) the risks of litigation; (3) the skill required and the quality of the work; (4) awards in similar cases; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check.

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, at *721-*722 (N.D. Cal. Mar. 17, 2017) (citing *Vizcaino*, 290 F.3d at 1048-52). As discussed below, **every one** of these factors weighs heavily in favor of an upward adjustment of the benchmark to one-third of the Settlement Amount.

### 1.    Class Counsel Achieved an Excellent Result for the Settlement Class

Courts have consistently recognized that the result achieved is "the most critical factor" to consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Hefler v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 213045, at *37 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Here, despite enormous risk (outlined below), Class Counsel obtained an excellent result for the Settlement Class – no matter how measured against similar settlements.

For example, both the aggregate Settlement Amount of $27.5 million and the per share settlement amount – $0.60 per share for shares that were valued at $34.50 per share in the Merger – exceed or are squarely in line with other Section 14 settlements, which raise unique challenges that do not exist in more traditional securities fraud actions under Section 10(b)/Rule 10b-5. These metrics are nearly equivalent to or exceed all five analogous Section 14 "merger projection challenge" case settlements previously identified by Class Counsel in (a) total amount, (b) per share recovery, and (c) per share recovery measured against the company's share price at the time of the Merger:[6]

---

[6]    *Ziegler v. GW Pharmaceuticals plc,* Case No. 3:21-cv-01019-BAS-MSB (S.D. Cal. 2024); *Karri v. Oclaro, Inc., et al.*, Case No. 3:18-03435 (N.D. Cal. 2024); *Baum v. Harman Int'l Indus. Inc.*, No. 3:17-cv-00246-RNC (D. Conn. 2022); *In re Envision Healthcare Corp.*, No. 18-1068-RGA (D. Del. 2021); *NECA-IBEW Pension Trust Fund v. Precision Castparts Corp.*, No. 16-cv-01756-YY (D. Or. 2021).

| Case Name | *Ziegler v. GW Pharmaceuticals* | *Karri v. Oclaro* | *Baum v. Harman Int'l* | *In re Envision Healthcare Corp.* | *NECA-IBEW v. Precision Castparts* | *Aimmune* |
|---|---|---|---|---|---|---|
| **Common Fund Amount** | $7.75m | $15.25m | $28m | $17.4m | $21m | $27.5m |
| **Number of Shares Held by Class** | 396m | 167.5m | 69m | 120m | 133m | 46m |
| **Market Cap / Price Per Share** | $6.81b / $220 p/ADS | $1.8b / $8.62 p/s | $5.5b / $111.50 p/s | $9.9b / $46 p/s | $37b / $235 p/s | $2.5b / $34.50 p/s |
| **Average Recovery Per Share** | $0.25 | $0.09 | $0.40 | $0.14 | $0.16 | $0.60 |
| **Fee Awarded from Settlement Fund** | 1/3 | 1/3 | 31% | 1/3 | 1/3 | Requested 1/3 |

The proposed Settlement Fund also represents (1) 28.9% of damages based on Aimmune's 52-week high share price (which represented an aggregate plausible damages amount of $95 million) and (2) 13.7% of the maximum theoretical aggregate damages of $201.2 million calculated by Plaintiffs' expert, assuming they prevailed on *all* claims against Defendants, which again exceeds the typical range of recoveries secured in comparable securities class actions more generally. *See* Monteverde Decl., ¶10; *Ziegler v. GW Pharmaceuticals plc,* Case No. 3:21-cv-01019-BAS-MSB (S.D. Cal. 2024) (ECF 47-1 and 53) (approving settlement that recovered 1.3% of maximum available damages); *Ferraro Family Foundation, Inc., et al. v. Corcept Therapeutics Inc., et al.,* Case No. 3:19-cv-01372-JD (N.D. Cal. 2023) (ECF 195 and 215) (approving settlement that recovered 7.3% of maximum available damages); *Vataj v. Johnson*, 2021 U.S. Dist. LEXIS 75879, at *26 (N.D. Cal. Apr. 20, 2021) (preliminarily approving settlement that recovered 2% of estimated damages); *In re*

*Extreme Networks, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 121886, at *27 (approving settlement that recovered 5%-9.5% of estimated maximum non-disaggregated damages).[7]

Accordingly, this "most critical factor" weighs heavily, if not decisively, in favor of an adjustment to one-third.

## 2.    The Litigation Was Risky, Uncertain, and Highly Complex

The "complexity of the issues and risks" undertaken by counsel are also relevant factors to be considered in fashioning an appropriate percentage-of-the-fund fee award. *In re Pacific Enters. Sec. Litig*, 47 F.3d 373, 379 (9th Cir. 1995). Section 14 merger cases seeking damages (as opposed to pre-close injunctive relief) are few and far between and no such case has gone to trial this century. The dearth of post-close Section 14 merger litigation has led to a limited and inconsistent body of law and even greater uncertainty for practitioners like Class Counsel that litigate these cases. And the PSLRA provides well-known significant protections to defendants that make it much harder for plaintiffs to recover damages. As a result of these facts, numerous courts have recognized that "'securities actions are highly complex and…securities class litigation is notably difficult and notoriously uncertain.'" *Hefler,* 2018 U.S. Dist. LEXIS 213045, at *37; *see also Mauss v. NuVasive, Inc.*, No. 13cv2005 JM (JLB), 2018 U.S. Dist. LEXIS 206387, at *15-16 (S.D. Cal. Dec. 5, 2018) (recognizing that "[s]ecurities class actions are complex actions to litigate" and often involve "complex and highly risky trial and likely post-trial appeals and motion practice"); *Scott v. ZST Digit. Networks, Inc.*, 2013 U.S. Dist. LEXIS 197940, at *11 (C.D. Cal. 2013) ("[C]ases brought under the [PSLRA]…involve a 'heightened level of risk' because PSLRA 'makes it more difficult for investors to successfully prosecute securities class actions.'"); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221,

---

[7]    *See also Omnivision*, 559 F. Supp.2d at 1046 (noting that a recovery of 9% of possible damages was "more than triple the average recovery in securities class action settlements"); *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 27 (*supra* note 2) (median ratio of settlement to losses was 1.2% in 2024 and 1.8% from 2021-2023); L.T. Bulan, L.E. Simmons, *Securities Class Action Settlements, 2022 Review and Analysis*, Cornerstone Research (2023), at 6 (stating that the median comparable securities class action settlements in 2022 resulted in a recovery of 4.3% or 4.4% of estimated damages), https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

1  235 (5th Cir. 2009) ("[T]o be successful, a securities class-action plaintiff must thread the eye of a

2  needle made smaller and smaller over the years by judicial decree and congressional action.").

3        Relatedly, the risk that going forward with litigation might result in no recovery for the

4  Settlement Class, particularly where (as here) complex legal issues are contested, "is a significant

5  factor in the award of fees." *Omnivision Techs.*, 559 F. Supp. 2d at 1046-47. As outlined in greater

6  depth in Co-Lead Plaintiffs' forthcoming Motion for Final Approval, Plaintiffs and Class Counsel

7  faced significant risks moving forward with the litigation. While Class Counsel remained confident

8  in their ability to prove their claims at trial, Defendants advanced several credible arguments

9  regarding both liability and damages. For example, Defendants argued that the Recommendation

10 Statement was not false and misleading because it informed stockholders that the Company's

11 projections had been reduced and included the impact of the maintenance duration assumption on the

12 share price in documents made available to investors with the original Recommendation Statement,

13 as well as in an amendment to the Recommendation Statement. *See* ECF 162, at 10-16 (Defendants'

14 Motion for Summary Judgment). They likewise argued that, because Palforzia had not reached

15 commercialization at the time of the Merger, the maintenance duration assumption was necessarily

16 an uncertain extrapolation made from a small number of clinical trials, and that Plaintiffs had not

17 adduced evidence that Defendants intended to deceive investors regarding this assumption. *Id.*

18 Defendants also argued that Plaintiffs could not support their claim that Aimmune's CEO intentionally

19 manipulated the projections, as he had every incentive to maximize his own proceeds in the Merger. *Id*.

20 at 18-19. Simply put, establishing Defendants' liability at summary judgment or trial would be difficult

21 and complex, with success far from certain. Monteverde Decl., ¶7.

22       Even more concerning were Defendants' arguments regarding, and Plaintiffs' unique hurdle

23 to proving, economic loss in a Section 14 case such as this. Even if liability had been established,

24 Defendants had numerous challenges to loss causation and damages, including the fact that Aimmune

25 stockholders received a 174% premium for their Aimmune shares through the Merger, and that there

26 was no higher offer on the table. ECF 162 at 20-22; 163; Monteverde Decl., ¶8. Although Plaintiffs

27

28

believe their loss causation theory is valid under Supreme Court precedent,[8] several lower court opinions have found that, when shareholders receive a premium over the trading price, it forecloses a finding of economic loss, because the merger consideration is "greater than the market value or actual value of the shares without consideration of the merger due to the existence of a merger premium." *See, e.g., In re Resolute Energy Corp. Sec. Litig.*, No. 19-77-RGA, 2021 U.S. Dist. LEXIS 19193, at *5, *10 (D. Del. Feb. 1, 2021) (citing five other opinions in support of proposition). Indeed, based in part on these facts and law, in a motion pending before the Court at the time of the Settlement, Defendants sought to exclude vast swaths of Plaintiffs' valuation expert's opinions that, if granted, may have singlehandedly rendered it impossible for Plaintiffs to prove damages at trial. ECF 163; Monteverde Decl., ¶8.

Perhaps most challenging of all, though, was Defendants' argument that Nestlé had sold Aimmune's primary product at a substantial loss and **essentially written off the value of the acquisition <u>while this case was pending</u>**. Monteverde Decl., ¶8. Had that fact made its way before the jury, the jury may well have found that Plaintiffs and the Class not only suffered no loss at all, but that Nestlé in fact overpaid for Aimmune to begin with. *Id*. Simply put, "in 'any securities litigation case, it [is] difficult for [plaintiff] to prove loss causation and damages at trial.'" *In re Zynga Sec. Litig.,* No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728, at *35 (N.D. Cal. Oct. 27, 2015).[9] That is all the more true in this case because of its *unique* economic loss issue, where the target company was essentially written off *while this case was pending*. *Accord* ECF No. 253, Preliminary

---

[8]     *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389 (1970); *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1100 (1991); *see also Baum v. Harman Int'l Indus.*, 575 F. Supp. 3d 289, 299 (D. Conn. 2021).
[9]     *See also Vinh Nguyen v. Radient Pharms. Corp.*, 2014 U.S. Dist. LEXIS 63312, at *6 (C.D. Cal. May 6, 2014) (noting that, in securities class actions, "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law.  The outcome of that analysis is inherently difficult to predict and risky."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 121886, at *24-*25 (noting that "[s]ecurities actions, in particular are often long, hard-fought, complicated, and extremely difficult to win" facing "obstacles include[ing] challenges to the material falsity of each alleged misstatement, class certification challenges, loss causation and damages challenges, and the risks inherent in a 'battle of the experts' of complex economic theories in a jury trial.").

Approval Transcript, at 6 ("the case has a lot of hurdles to get over") and 10 (noting "a lot of factual hurdles and defenses the Defendant was prepared to raise here").

Barring the Settlement, there was simply no guarantee that any additional benefit would be provided to the Class, and a very real risk that the Class would receive less than the Settlement Amount – *or nothing at all*.[10] Co-Lead Plaintiffs and Class Counsel were not alone in their concerns: the mediator recognized them and made his mediator's recommendation with them in mind. Monteverde Decl., ¶¶5-6. What is more, as noted above, even if Plaintiffs prevailed at a trial, Defendants had previously contested whether there remains a private right of action under Section 14(e) at all, and they were sure to raise that challenge and pursue it through appeal – and likely to the Supreme Court – a process that would further extend the litigation for years and risked reversal of any verdict. *Accord* ECF No. 253, Preliminary Approval Transcript, at 10 (noting risk of appeal and time associated therewith).

Class Counsel met these challenges and uncertainty head on at every procedural stage, defeating a motion to dismiss, a motion for judgment on the pleadings, *and* a motion for leave to seek an interlocutory appeal; winning class certification; engaging in extensive discovery (including over 313,000 pages of documents and 19 depositions); retaining experts; opposing Defendants' motion for summary judgment and *Daubert* motion; and preparing the case for trial – which was just two months away at the time of Settlement. Monteverde Decl., ¶¶4-9. Indeed, Plaintiffs pressed the case to the precipice: the parties did not agree to a settlement in principle until just *one day* before the dispositive motion hearing, and only then after a double-blind mediator's proposal. *Id*. at ¶6. The Settlement is, simply put, a testament to Class Counsel's efforts and dogged determination in the face of significant obstacles to recovery. Accordingly, this factor too weighs heavily in favor of an adjustment to one-third.

---

[10]     Indeed, from 1996 to 2018, only 25 securities class actions (*of any kind*) went to a verdict and of those 25, only 13 resulted in a verdict for plaintiffs. Kevin LaCroix, THE D&O DIARY, *Rare Securities Class Action Lawsuit Trial Results in Partial Verdict for Plaintiffs* (Feb. 5, 2019), https://www.dandodiary.com/2019/02/articles/securities-litigation/rare-securities-class-action-lawsuit-trial-results-partial-verdict-plaintiffs/.

### 3. <u>The Skill Required and Quality of the Work</u>

"The 'prosecution and management of a complex national class action requires unique legal skills and abilities.' This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision Techs.*, 559 F. Supp. 2d at 1047; *see also Richardson v. THD At-Home Servs.*, 2016 U.S. Dist. LEXIS 46784, at *23 (E.D. Cal. Apr. 5, 2016) ("The complexity of issues and skills required may weigh in favor of a departure from the benchmark fee award"). Class Counsel have significant experience with securities class actions and advocating for shareholder rights, especially in the merger field, and they effectively utilized their skill and experience to procure an outstanding Settlement. Their demonstrated skill and the quality of their work further supports the reasonableness of the requested fee.

As noted, and as this Court is aware, Class Counsel successfully overcame several potentially dispositive motions and vigorously advocated for the Settlement Class for more than four years. Indeed, one of the primary reasons that this case settled on the precipice of trial and did not proceed to a potentially devastating jury verdict or appeal was the skillful advocacy and reputations of Class Counsel. As outlined in Plaintiffs' forthcoming Motion for Final Approval (and as this Court recognized), Class Counsel have *significant* experience prosecuting securities class actions and a well-documented history of achieving valuable outcomes for investors, and their skill and zealous advocacy in shareholder litigation are well-recognized. *See generally* Monteverde Decl; ECF 253 Preliminary Approval Transcript at 10 ("everybody is experienced as counsel"). M&A was ranked in the Top 30 in the 2024 ISS Securities Class Action Services Report in recognition of the substantial settlements achieved by the firm on behalf of shareholders, and KSF was ranked in the Top 10 of the 2024 ISS Securities Class Action Services Report and has secured significant settlements for shareholders. Monteverde Decl., Exs. 2 and 3 (firm resumes); ISS, *Top 50 Plaintiff Law Firms 2024*, available at https://www.issgovernance.com/library/top-50-plaintiff-law-firms-2024/. What is more, the *specific* attorneys in this matter are *exclusively* merger litigators and have secured many significant merger settlements and changed the law for tender offers in this Circuit. *Id.*

Class Counsel's track record speaks to their skill and experience – skill and experience that

1  benefitted the Settlement Class here. Their skill, experience, perseverance, and reputation as highly

2  skilled merger litigators and strong shareholder advocates were significant contributing factors to the

3  outstanding result obtained here, particularly given the risks in continuing this litigation through trial.

4      The standing of opposing counsel also merits consideration, because that standing reflects the

5  challenges faced by Class Counsel and the skill necessary to meet those challenges. *See, e.g., Wing*

6  *v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997) (noting the district court's evaluation of the job

7  done by class counsel "in light of the quality of opposition counsel and [defendant's] record of success

8  in such litigation"). Defendants were represented by a team of experienced attorneys from Latham &

9  Watkins, one of the nation's premier defense firms. Defense counsel expended considerable effort

10  and expense in their zealous defense against Plaintiffs' claims. The favorable result obtained by Class

11  Counsel against this formidable firm and their well-financed clients and despite their zealous

12  advocacy are further evidence of Class Counsel's skill and supports the requested fee.

13      **4.**    **The Requested Fee Is Consistent with Awards in Similar Cases**

14      As noted, "[a]lthough 25% is the benchmark for a reasonable fee award, 'in most common

15  fund cases, **the award exceeds that benchmark**.'" *Bailey v. Kinder Morgan G.P., Inc.*, No. 18-cv-

16  03424-TSH, 2020 U.S. Dist. LEXIS 176922, at *19 (N.D. Cal. Sept. 25, 2020) (quoting *Omnivision*,

17  559 F. Supp. 2d at 1047); *Booher*, 2023 U.S. Dist. LEXIS 71342, at *3 (same).

18      Indeed, courts in the Ninth Circuit (including this District) routinely award attorneys' fees

19  representing one-third of the common fund. *See, e.g., Morris v. Lifescan*, Inc., 54 Fed. Appx. 663,

20  664 (9th Cir. 2003) (affirming 33% fee in $14.8 million settlement); *In re Mego Fin. Corp. Sec. Litig.*,

21  213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third fee in $1.725 million fund); *In re Pacific*

22  *Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee in $12 million settlement);

23  *Jiangchen v. Rentech, Inc.*, No. CV 17-1490, 2019 U.S. Dist. LEXIS 180474, at *36 (C.D. Cal. Oct.

24  10, 2019) (awarding 33.33% fee in $2.05 million settlement); *Singer v. Becton Dickinson & Co.*, 2010

25  U.S. Dist. LEXIS 53416, at *23 (S.D. Cal. 2010) ("33.33% of the common fund falls within the

26  typical range of 20% to 50% awarded in similar cases"); *Romero v. Producers Dairy Foods, Inc.*, No.

27  1:05cv0484 DLB, 2007 U.S. Dist. LEXIS 86270, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award

28

1    of 33% of the common fund, and stating that "'[e]mpirical studies show that, regardless whether the

2    percentage method or the lodestar method is used, fee awards in class actions average around one-third

3    of the recovery'") (citing 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)).

4         A one-third fee is also well within the range of percentage-of-the-fund fees that courts in this

5    Circuit have awarded specifically in similar complex class actions, including similar Section 14

6    merger class actions. *See, e.g., Karri v. Oclaro, Inc.*, 18-cv-3435-JD (N.D. Cal. 2024) (Donato, J.)

7    (ECF No. 225) (one-third of $15.25 million §14 merger settlement); *Davis v. Yelp, Inc.*, 2023 U.S.

8    Dist. LEXIS 40323, at *6 (N.D. Cal. Jan. 27, 2023) (33% of $22.25 million settlement in securities

9    case and collecting cases awarding same percentage of similarly sized common funds); *In re*

10   *Capacitors Antitrust Litig.*, 2023 U.S. Dist. LEXIS 37407, at *17-18 (N.D. Cal. Mar. 6, 2023)

11   (Donato, J.) (40% of $165 million partial settlement, resulting in cumulative 31.01% award of total

12   $604,550,000 settlement); *Andrews v. Plains All Am. Pipeline L.P.*, 2022 U.S. Dist. LEXIS 172183,

13   at *10 (C.D. Cal. Sept. 20, 2022) (32% of $230 million settlement); *Plant v. Jaguar Animal Health,*

14   *Inc.*, 17-cv-4102-RS (N.D. Cal. May 27, 2021) (ECF No. 97) (33% of $2.6 million §14 merger

15   settlement); *In re Lidoderm Antitrust Litig.*, 2018 U.S. Dist. LEXIS 162425, at *32 (N.D. Cal. Sept.

16   20, 2018) (33% of $104.75 million settlement); *Ziegler v. GW Pharmaceuticals plc*, Case No. 3:21-

17   cv-01019-BAS-MSB (S.D. Cal. 2024) (ECF 55) (one-third of $7.75 million §14 merger settlement);

18   *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (33% of $12 million settlement); *In re*

19   *Tezos Sec. Litig.*, No. 3:17-cv-06779-RS (N.D. Cal. Aug. 28, 2020) (ECF No. 262) (33% of $25

20   million recovery in securities action).

21        The Ninth Circuit has also noted that the "market rate for the particular field of law" should be

22   considered, as it is "'appropriate to examine lawyers' reasonable expectations, which are based on the

23   circumstances of the case and the range of fee awards out of common funds of comparable size.'" *In re*

24   *Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 632 (N.D. Cal. 2021) (citing *Vizcaino*, 290

25   F.3d at 1050). A one-third fee is supported by the market rate in similar Section 14 settlements throughout

26   the country, and Class Counsel specifically have been awarded fees of one-third of the common fund

27   in other recent Section 14 settlements that they have secured, including in *Oclaro*, *Envision*

28

*Healthcare*, *GW Pharmaceuticals*, *Transgenomic*, and *Jaguar Health*. *See Karri v. Oclaro, Inc.*, 18-cv-3435-JD (N.D. Cal. 2024) (ECF 225) (1/3 of $15.25 million settlement); *Ziegler v. GW Pharmaceuticals plc*, Case No. 3:21-cv-01019-BAS-MSB (S.D. Cal. 2024) (ECF No. 55) (1/3 of $7.75 million settlement); *In re Envision Healthcare Corp.*, Case No. 1:18-cv-01068-RGA-SRF, (D. Del. Feb. 16, 2021) (ECF No. 105) (1/3 of $17.4 million settlement); *Campbell v. Transgenomic, Inc.*, No. 4:17-CV-3021, 2020 U.S. Dist. LEXIS 97063, at *10 (D. Neb. June 3, 2020) (1/3 of $1.95 million settlement); *Plant v. Jaguar Animal Health, Inc. et al.*, Case No. 3:17-cv-04102-RS (N.D. Cal. May 27, 2021) (ECF No. 97) (1/3 fee of $2.6 million settlement); *see also NECA-IBEW Pension Trust Fund v. Precision Castparts Corp, et al.*, 16-cv-01756-YY (D. Or. 2021) (ECF No. 169) (1/3 of $21 million settlement); *Murray v. Earthlink Holdings Corp.*, No. 4:18-cv-00202-JM, 2025 U.S. Dist. LEXIS 26525 (E.D. Ark. Feb. 6, 2025) (32% of $85 million settlement).

Finally, the advanced procedural posture of this case should also be considered. *Rodriguez v. Nike Retail Servs.*, No. 14-cv-01508-BLF, 2022 U.S. Dist. LEXIS 15413, at *12, 18 (N.D. Cal. Jan. 27, 2022) (finding requested fee of one-third "reasonable, especially in light of the significant amount of work Class Counsel performed in this case," where settlement was reached after years of litigation and substantial discovery, including depositions of witnesses and experts); *Wininger*, 301 F.3d at 1127 (relevant factors for upward adjustment includes "length and complexity of litigation"). As noted, Class Counsel took this case to the precipice, settling one day before the summary judgment motion hearing and just two months before trial. *Accord* ECF No. 253, Preliminary Approval Transcript, at 6 (noting that "there was a lot of work done on this case") and 12 (noting that "there has been a very thorough investigation of the case by Plaintiff's counsel" and it "has been pre-tested in various ways").

In light of this fact in particular, the requested fee award is consistent with fee awards in past securities and other complex class action cases by this Court. For example, when presented with settlements in cases that settled early (at the motion to dismiss stage) and without much effort, this Court has awarded modest percentage-of-the-fund fee awards. *See, e.g., Sterrett v. Sonim Technologies, et al*, Case No. 3:19-cv-06416-MMC, ECF No. 107, 115 (N.D. Cal. Mar. 5, 2021)

(case settled when MTD pending; $500K fee award representing 25% of fund); *In re SiRF Technology Holdings, Inc. Securities Litig.*, Case No. 3:08-cv-00856-MMC, ECF 154, 157 (N.D. Cal. Jan. 8, 2010) (case settled when MTD pending; $580K fee award representing 20% of fund); *In re Veritas Software Corp. Securities Litig.*, Case No. C-03-0283-MMC, ECF No. 246 (Feb. 23, 2008) (case settled when third MTD pending; $6M fee award representing 17% of fund).[11] By contrast, when presented with settlements in cases that settled at an advanced procedural stage, after the expenditure of significant time, effort, and money by counsel, as in this case, this Court has rewarded counsel for that effort and the risk they undertook by awarding them one-third of the fund. *See, e.g., Miguel v. Salesforce.com*, Case No. 3:20-cv-01753-MMC (N.D. Cal. 2025) (ECF Nos. 190 and 200) (case settled on the eve of trial; $449,955 fee award representing one-third of fund). This Court should do the same here, and this factor likewise weighs heavily in favor of an adjustment to one-third.

### 5. The Contingent Nature of the Fee, the Financial Burden Carried by Class Counsel, and the Opportunity Cost of Bringing Suit

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). This practice encourages the legal profession to assume such a risk and "assur[es] competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose." *Id.* "The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Omnivision Techs.*, 559 F. Supp. 2d at 1047. Thus, "courts tend to find above-market-value fee awards" in contingency fee cases more appropriate, to encourage counsel to take on such cases for the benefit of plaintiffs who could not afford to pay hourly fees. *Deaver v. Compass Bank*, 2015 U.S. Dist. LEXIS 166484, at *35 (N.D. Cal. Dec. 11, 2015); *Omnivision Techs.*, 559 F. Supp. 2d at 1047.

---

[11]   Notably, all of these cases were Section 10(b) securities fraud cases, which tend to be easier to bring than Section 14 cases, as they are usually spawned by public stock drops and investigations, whereas Section 14 cases must be built by diligent counsel.

"This incentive is **especially important in securities cases**," *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016), as attorneys undertake "immense risks" in "prosecuting complex cases in which there is a great risk of no recovery." *In re NCAA Ath. Grant-In-Aid Cap. Antitrust Litig.*, 2017 U.S. Dist. LEXIS 201108, at *15 n. 42 (N.D. Cal. Dec. 6, 2017). Indeed, there have been many securities class actions in which counsel for the plaintiffs took on the risk of pursuing claims on a contingency basis, expended thousands of hours and millions of dollars, and received no remuneration despite their diligence and expertise. *See supra* note 10 (nearly half of all securities class actions that have gone to verdict resulted in no recovery). One notable recent example is the securities class action against Tesla in this District. After *years* of litigation, and despite the fact that the Court granted partial summary judgment on certain elements in *plaintiff's favor*, after a lengthy trial, the jury returned a verdict in *defendants' favor*. *In re Tesla, Inc. Sec. Litig.*, 2022 U.S. Dist. LEXIS 88609 (N.D. Cal. Apr. 1, 2022) and *Tesla*, No. 3:18-cv-04865-EMC (ECF No. 671) (N.D. Cal. Feb. 3, 2023); *In re Tesla Inc.*, 2023 U.S. Dist. LEXIS 103682 (N.D. Cal. Jun. 14, 2023) (denying plaintiffs' motion for judgment as a matter of law or for a new trial).

While the contingent risks to plaintiff's counsel in securities actions are well-recognized, the risks faced by Class Counsel here were greater than usual as a result of the evidentiary record and need to prove that the Class suffered an economic loss, despite the enormous premium they received, the lack of any competing offers, and the fact that Nestle wrote off its investment in Aimmune – a fact that could have singlehandedly supported a jury verdict of zero. The risks faced by Class Counsel here were also magnified by the fact that they are both boutique securities firms, and litigating this Action required the devotion of a significant amount of their finite resources and the foregoing of other opportunities. Montverde Decl., ¶14. This too should be taken into account. *See Denton v. Pennymak Loan Servs., LLC*, 252 F. Supp. 3d 504, 518 (E.D. Va. 2017) (noting that counsel "is a small law firm and thus representing a client on a contingent fee…basis necessarily involved loss of other opportunities.").

As noted, to date, Class Counsel have worked for more than four years without compensation, investing in that time 7,356 hours, for a total lodestar of $5,748,037.50, and also

incurring unreimbursed expenses of $325,088.72. Monteverde Decl. ¶20. Had Class Counsel lost this case, that economic loss would have been significant to them, and if small contingency-fee firms are not granted multipliers when they win, they can go out of business when they lose. Class Counsel's significant commitment of time, money, and resources litigating this Action, the substantial contingent risk they took in so doing, and the lost opportunity costs they incurred as a result likewise weigh heavily in favor of an adjustment to one-third.

### 6. The Reaction of the Class

The reaction of the class is also a factor courts within this Circuit consider when evaluating a requested fee. *Omnivision Techs.*, 559 F. Supp. 2d at 1042. While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *41 (N.D. Cal. Dec. 17, 2018) ("As with the Settlement itself, the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval."); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent).

Here, the Class was informed in the Notice that Class Counsel would move the Court for an award of attorneys' fees not to exceed one-third of the Settlement Amount and payment of litigation expenses not to exceed $450,000. ECF No. 251-1 (Notice). The Notice advised Class Members of their right to object to the proposed fee and expense request and that such objections are to be filed with the Court no later than June 6, 2025. *Id.* While this deadline has not yet passed, a low number of objections would further support the request fee award here.

### 7. A Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

Finally, the Ninth Circuit has explained that the lodestar method may be used to crosscheck the reasonableness of the percentage-based award of attorneys' fees, *Vizcaino*, 290 F.3d at 1050, and

that "[t]he benchmark percentage should be adjusted" when circumstances indicate that a 25% recovery would be too small "in light of the hours devoted to the case." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, at 1311 (9th Cir. 1990). In other words, courts in the Ninth Circuit may, *but are not required to*, assess the reasonableness of the fee request through a cross-check of counsel's lodestar. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (declining to mandate "[cross-check] requirement"). "While the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award," and is especially "helpful in **suggesting a higher percentage when litigation has been protracted**" – as is the case here. *Vizcaino*, 290 F.3d at 1050.

In this case, the lodestar cross-check confirms the reasonableness of Class Counsel's fee request. As noted, over more than four years, Class Counsel have expended 7,356 hours litigating this action, resulting in a total lodestar of $5,748,037.50. Monteverde Decl., ¶20.[12] Significant additional uncompensated work in connection with the Settlement and claims administration will be incurred going forward. Indeed, in Class Counsel's experience, preparing for final approval and administering a settlement, which itself can often take as much as a year, often results in the expenditure of at least an additional 100 hours.

Even without factoring in that additional expenditure of time, Class Counsel's fee request reflects a lodestar multiplier of 1.59x, which is on the low-end of the typically cited range.[13] This is more than

---

[12]    The rates charged by Class Counsel (between $350-$850 for associates and between $1,000-$1,250 for partners) are market billing rates that reflect the attorneys' skill and experience. Monteverde Decl., ¶16 and Ex. 8 (Palestina Declaration). *See, e.g., Fleming v. Impax Laby's Inc.*, 2022 U.S. Dist. LEXIS 125595, at *28 (N.D. Cal. July 15, 2022) (approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and noting that such "billing rates [are] in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *Hefler*, 2018 U.S. Dist. LEXIS 213045, at *39 (finding rates ranging from $650 to $1,250 for partners or senior counsel and from $400 to $650 for associates as reasonable). *Accord Khoja v. Orexigen Therapeutics*, No. 15cv00540-JLS-AGS, 2021 U.S. Dist. LEXIS 230105, at *31 and ECF No. 149-5, PageID.3786 (S.D. Cal. Nov. 30, 2021) (holding that the lodestar cross-check (which included KSF partner rates of $925-$1,100) supported a 33% fee).

[13]    Adding the to-be-incurred time that counsel will spend securing final approval and administering the settlement would yield a total lodestar multiplier closer to 1.55x – for uncompensated work performed *over a 5+ year period*.

MOTION FOR ATTORNEYS' FEES, EXPENSES, AND AWARDS TO CO-LEAD PLAINTIFFS
Case No. 3:20-CV-06733-MMC

reasonable, as courts in this Circuit frequently award multipliers of as high as 4x. *See e.g.*, *Capacitors*, 2018 U.S. Dist. LEXIS 169764, at \*52 (noting that, "[i]n the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 U.S. Dist. LEXIS 16939, at \*12 (N.D. Cal. Feb. 6, 2013) ("[m]ultipliers of 1 to 4 are commonly found to be appropriate in complex class action cases"); *Winters v. Two Towns Ciderhouse, Inc.*, No. 20-cv-00468-BAS-BGS, 2021 U.S. Dist. LEXIS 89872, at \*6 (S.D. Cal. May 11, 2021) ("lodestar of 1.675 is not unreasonable or out of the realm of multipliers other courts have awarded") (citing *Vizcaino*, 290 F.3d at 1043 (upholding a lodestar multiplier of 3.65)); *Facebook*, 522 F. Supp. 3d at 633 (awarding fee in $650 million common fund settlement representing 4.71 multiplier); *In re Verifone Holdings, Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 20044, at \*11-12 (N.D. Cal. Feb. 18, 2014) (noting that "over 80% of multipliers fall between 1.0 and 4.0" and awarding fee reflecting 4.3 multiplier); *Corzine v. Whirlpool Corp.,* 2019 U.S. Dist. LEXIS 223341, at \*32 (N.D. Cal. Dec. 31, 2019) ("**a lodestar multiplier of 1.86 is modest**"); *Buccellato v. AT & T Operations, Inc.,* 2011 U.S. Dist. LEXIS 85699, at \*4 (N.D. Cal. June 30, 2011) ("multiplier of 4.3 is reasonable"); *Kelly v. Wengler*, 822 F.3d 1085, 1093, 1105 (9th Cir. 2016) (affirming lodestar multipliers of 2.0 and 1.3). Indeed, this Court *specifically* has awarded lodestar multipliers as high as 4x in past complex class action cases. *See, e.g., In re Veritas Software Corp. Securities Litig.*, Case No. C-03-0283-MMC (ECF No. 246) (Feb. 23, 2008). Accordingly, this factor too weighs heavily in favor of the requested fee adjustment.

* * *

In sum, in light of the significant risks undertaken and resources invested by Class Counsel over more than four years, their zealous advocacy, and the results they obtained for the Class, the requested fee is reasonable. **All of the relevant factors support the requested fee award**, and Class Counsel respectfully request that the Court grant it.

## IV.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted). "Expense reimbursements comport with the

notion that the district court may 'spread the costs of the litigation among the recipients of the common benefit,'" *Grace v. Apple, Inc.*, 2021 U.S. Dist. LEXIS 66294, at \*17-18 (N.D. Cal. Mar. 31, 2021), and should therefore be paid from the common fund. *Ochoa v. McDonald's Corp.*, 2016 U.S. Dist. LEXIS 157302, at \*8-9 (N.D. Cal. Nov. 14, 2016) ("expenses should be paid from the common fund because all class members should contribute their fair share of the costs of the litigation from which they benefitted").

Here, although the Notice informed Class Members that Class Counsel would seek reimbursement of up to $450,000 in expenses, Class Counsel is only seeking expenses of $325,088.72. As outlined in the itemized list of costs and expenses by category provided, the expenses sought are the type routinely charged to hourly paying clients; every dollar of those expenses was incurred for the benefit of the Class; and Class Counsel took pains to limit those expenses to all that was required to secure a favorable result, and nothing more. Monteverde Decl., ¶¶17-18; *Khoja*, 2021 U.S. Dist. LEXIS 230105, at \*33-34 (approving Lead Counsel's expenses such as expert and consulting fees, printing, photocopying, postage, transcript fees, mediation expenses, court filing fees and court reporting fees as the "types of expenses [] typically incurred by counsel in complex litigation and [] routinely charged to clients billed by the hour."). Indeed, nearly all of Class Counsel's expenses were incurred either for the retention of experts ($196,882.00), depositions ($50,594.76), or mediation ($40,457.50) (representing $287,934.26 of $325,088.72 in total expenses), and **Class Counsel has excluded from its expense request the travel and lodging expenses incurred by M&A and KSF – a New York City and a New Orleans based law firm – in prosecuting the Action, which included multiple trips to the West Coast for depositions and hearings.** Monteverde Decl., ¶18. <u>**The excluded travel and lodging fees, which were substantial, will be borne entirely by Class Counsel.**</u> *Id.*

In light of the fact that the expenses sought here are routinely charged to clients and reasonably incurred in prosecuting and settling the Action, Class Counsel respectfully request that the Court award Class Counsel the entirety of their requested $325,088.72 in unreimbursed expenses.

## V.   PLAINTIFFS' REQUESTED SERVICE AWARDS ARE REASONABLE AND SHOULD ALSO BE APPROVED

Pursuant to the PSLRA, a class representative may seek an award of reasonable costs and

expenses directly relating to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4).  Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *accord In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class actions cases'"). Factors considered in making such award include "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions…[and] the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (ellipses in original).

As set forth in their Declarations, over the past four years, each Plaintiff devoted at least 50-60 hours of their time to this Action. Monteverde Decl., Exs. 4-6 (Declarations of Plaintiffs). This time included communicating with Class Counsel regarding case status and strategy, reviewing important case documents (like the complaints, motions and briefs, court orders, mediation papers, and/or settlement documents), collecting and producing documents to Defendants, answering interrogatories and requests for admission, and preparing for and attending/**sitting for depositions.** *Id.* And, as noted, those efforts resulted in an excellent result for the Class.

For this service, Plaintiffs – who were the *only* plaintiffs to litigate this action on behalf of the Class – each seek a $5,000 service award pursuant to 15 U.S.C. § 78u-4(a)(4) as reimbursement for their time and expenses in representing the Settlement Class. These requested awards are fully supported by the law. *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 266 (N.D. Cal. 2015) (collecting cases and noting that, "[i]n this district, a $5,000 payment is presumptively reasonable," and service awards "typically range from $2,000 to $10,000"); *Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183, at *15-16 (C.D. Cal. Oct. 24, 2017) (collecting

1  "numerous cases in which service awards of $10,000 or more are found reasonable").[14]

2  Class Counsel likewise believe service awards of this amount are fully supported by Plaintiffs'

3  efforts. Finally, but importantly, the Notice stated that Plaintiffs would seek up to $25,000 in

4  aggregate service awards, and, to date, no objections have been made. ECF No. 251-1 (Notice).

5  Plaintiffs therefore respectfully request that the Court award each Plaintiff a $5,000 service award.

6  **VI.    CONCLUSION**

7  For the foregoing reasons, Class Representatives and Class Counsel respectfully request that the

8  Court award: (i) attorneys' fees of one-third of the Settlement Amount ($9,166,667) and payment of

9  $325,088.72 in litigation expenses, plus interest on both amounts at the same rate earned by the Settlement

10  Amount; and (ii) Plaintiffs' service awards of $5,000 each.

11  Dated: May 2, 2025                              Respectfully submitted,

12  David E. Bower (SBN 119546)            */s/ Juan E. Monteverde*
13  **MONTEVERDE & ASSOCIATES PC**         Juan E. Monteverde (NY Reg. No 4467882)
   600 Corporate Pointe, Suite 1170       **MONTEVERDE & ASSOCIATES PC**
14  Culver City, CA 90230                   Juan E. Monteverde (*pro hac vice*)
   Tel: (310) 446-6652                    Miles D. Schreiner (*pro hac vice*)
15  dbower@monteverdelaw.com               Jonathan T. Lerner (*pro hac vice*)
                                          350 Fifth Avenue, Suite 4740
16  **KAHN SWICK & FOTI, LLC**             New York, NY 10118
17  Michael Palestina (*pro hac vice*)     Tel: (212) 971-1341
   Brian Mears                            Fax: (212) 202-7880
18  Gina Palermo                           jmonteverde@monteverdelaw.com
   1100 Poydras Street, Suite 960         mschreiner@monteverdelaw.com
19  New Orleans, LA 70163                  jlerner@monteverdelaw.com
   Telephone: (504) 455-1400
20  michael.palestina@ksfcounsel.com      *Counsel for Co-Lead Plaintiffs and Class Counsel*
21  brian.mears@ksfcounsel.com
   gina.palermo@ksfcounsel.com
22
23  *Counsel for Co-Lead Plaintiffs and Class Counsel*
24

25  _____
   [14]    Such awards also would "not constitute inequitable treatment of class members." *Extreme
26  Networks,* 2019 U.S. Dist. LEXIS 121886, at *26; *accord In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934, 943 (9th Cir. 2015) ("incentive awards…do not, by themselves, create an
27  impermissible conflict between class members and their representatives").

28