Juan E. Monteverde (admitted *pro hac vice*, NY Reg. No. 4467882)
MONTEVERDE & ASSOCIATES PC
The Empire State Building
350 Fifth Avenue, Suite 4740
New York, New York 10118
Tel: (212) 971-1341
jmonteverde@monteverdelaw.com

David E. Bower (SBN 119546)
MONTEVERDE & ASSOCIATES PC
600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (213) 446-6652
Fax: (212) 202-7880
dbower@monteverdelaw.com

*Counsel for Co-Lead Plaintiffs and Class Counsel*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE AIMMUNE THERAPEUTICS, INC. SECURITIES LITIGATION | Master File No. 3:20-CV-06733-MMC<br><br>**DECLARATION OF JUAN E. MONTEVERDE IN SUPPORT OF CO-LEAD PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO CO-LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. § 78u-4(a)(4)**<br><br>Hearing: July 18, 2025<br>Time: 9:00 a.m.<br>Court: Courtroom 7, 19th Floor<br>Judge: Hon. Maxine M. Chesney |

I, Juan E. Monteverde, declare as follows:

1. I am an attorney duly licensed to practice law in the State of New York and am admitted to practice *pro hac vice* before this Court. I am the Founder and Managing Partner at the law firm Monteverde & Associates PC, Co-Lead Counsel for Co-Lead Plaintiffs Cecelia Pemberton, Bruce Svitak, and Barbara Svitak in the Action, and Court-appointed Class Counsel.

2. I submit this declaration in support of Co-Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses and Awards to Co-Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4).

3. I have personal knowledge of the facts set forth herein and if called as a witness, could and would testify competently to these facts under oath.

4. During the course of the Action, Defendants and third parties produced and Class Counsel reviewed more than 313,000 pages of discovery documents, including e-mails, board materials, financial data and projections, analyst reports, and other Merger-related documentation. The parties conducted 19 fact and expert witness depositions. All three Co-Plaintiffs sat for depositions and produced documents to Defendants. Plaintiffs also prepared and mailed surveys to approximately 2,104 potential class members regarding the importance of the facts at issue in the case to the average reasonable investor. In addition, the parties engaged respective experts. Plaintiffs retained William Jeffers, CFA of the Griffing Group, and Defendants engaged Paul A. Gompers. Both experts filed extensive opening and responsive reports, and both experts were deposed.

5. On September 24, 2024, the parties participated in a mediation before David M. Murphy of Phillips ADR Enterprises, P.C. By the time the parties participated in the mediation, fact and expert discovery was complete, and both parties had fully briefed and opposed respective motions for summary judgment and *Daubert* motions. In connection with the mediation, the parties provided the mediator with mediation statements and presentations. While the parties were not able to reach a settlement at the mediation, the parties continued their discussions with the assistance of Mr. Murphy. On October 31, 2024, at the request of the parties, the hearing on the summary judgment and *Daubert* motions was rescheduled to November 8, 2024, to allow the parties to focus on ongoing settlement negotiations. On November 7, 2024, after further negotiations, the parties accepted a double-blind

mediator's proposal and reached an agreement in principle to resolve the Litigation, subject to Court approval.

6. Through the mediation process, the strengths and weaknesses of the parties' claims and defenses were extensively debated; negotiations were hard-fought; and Plaintiffs and Class Counsel were thus well-positioned to evaluate the strengths and weaknesses of the claims and defenses, as well as the fairness of the Settlement. On November 7, 2024, after further negotiations, the parties accepted a mediator's proposal and reached an agreement in principle to resolve the Litigation, subject to Court approval. Thereafter, the parties memorialized the terms of the Settlement in the Stipulation.

7. While Plaintiffs remained confident in their ability to ultimately prove their claims at trial, Defendants advanced several credible arguments regarding both liability and damages. For example, Defendants argued the Recommendation Statement was not false and misleading because it informed stockholders that the Company's projections had been reduced and included the impact of the maintenance duration assumption on the share price in an amendment to the Recommendation Statement. *See* ECF No. 162 at 10-16 (Defendants' Motion for Summary Judgment). They likewise argued that, because Palforzia had not reached commercialization at the time of the Merger, the maintenance duration assumption was necessarily an uncertain extrapolation made from a small number of clinical trials, and that Plaintiffs had not adduced evidence that Defendants intended to deceive investors regarding this assumption. *Id*. Defendants also argued that Plaintiffs could not support their claim that Dr. Dallas intentionally manipulated the projections, as he had every incentive to maximize his own proceeds in the Merger. *Id.* at 18-19. Simply put, establishing Defendants' liability at summary judgment or trial would be difficult and complex, with success far from certain.

8. Even more concerning were Defendants' arguments regarding, and Plaintiffs' unique hurdle of proving, economic loss in a Section 14 case such as this one. Even if liability had been established, Defendants had numerous challenges to loss causation and damages, including the fact that Aimmune stockholders received a 174% premium for their Aimmune shares through the Merger, and that there was no higher offer on the table. ECF 162 at 20-22; ECF 163. Indeed, based in part on

2

MONTEVERDE DECL. IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES
Case No. 3:20-cv-06733-MMC

these facts, in a motion pending before the Court at the time of the Settlement, Defendants sought to exclude vast swaths of Plaintiffs' valuation expert's opinions that, if granted, may have singlehandedly rendered it impossible for Plaintiffs to prove damages at trial. ECF 163. Perhaps most compelling of all, though, was Defendants' argument that Nestle had sold Aimmune's primary product at a substantial loss and essentially written off the value of the acquisition *while this case was pending*. Had that single fact made its way before the jury, a jury may well have found that Plaintiffs and the Class not only suffered no loss at all, but that Nestle in fact overpaid for Aimmune to begin with.

9. Moreover, while the Class had already been certified by the Court, Rule 23(c)(1) provides that a class certification order may be altered or amended at any time prior to a decision on the merits, such that there was an ongoing risk that any certified class could have been disturbed on appeal or if Defendants successfully moved to decertify the Class. And, even if Plaintiffs prevailed at a trial, Defendants would almost certainly file an appeal – a process that would further extend the litigation for years and risk reversal of any verdict. Finally, barring the Settlement, this case would require the expenditure of substantial time and money for trial and beyond, with no guarantee that any additional benefit would be provided to the Settlement Class, and with the risk that the Class would receive nothing. As noted, at the time the Settlement was reached, Defendants' motion for summary judgment sought dismissal of all claims. Conversely, the Settlement confers a substantial and immediate benefit and avoids the risks associated with obtaining a wholly speculative (though potentially larger) sum in the future. In sum, Class Counsel believes the Settlement balances the risks, costs, and delay inherent in complex cases, is a meaningful recovery, and thus merits preliminary approval.

10. Here, the $27.5 million recovery represents (1) 28.9% of damages based on Aimmune's 52-week high share price (which represented an aggregate plausible damages amount of $95 million) and (2) 13.7% of the maximum theoretical aggregate damages of $201.2 million calculated by Plaintiffs' expert, assuming Plaintiffs prevailed on *all* claims against Defendants. Assuming 100% of the shares in the Settlement Class submit a valid and timely Proof of Claim, the

3

average distribution will be approximately $0.60 per share owned (before the payment of Court-approved fees and expenses (estimated to be approximately $0.20 per share) and the cost of notice and claims administration). This proposed Settlement recovery is in line with and exceeds recent comparable class action settlements and is a very good result for any stage of the litigation. *See* Exhibit 1 attached hereto.

11. As such, Class Counsel believe the Settlement is fair, reasonable and adequate, and in the best interest of the Settlement Class. While Plaintiffs believe they have meritorious claims and would have prevailed at trial, there remains a substantial risk that Defendants could prevail on one or more of their arguments. Defendants have denied, and continue to deny, each and all of the claims and contentions asserted by Plaintiffs. Plaintiffs believe it is in the interest of the Settlement Class to offset these risks by settling at this phase of the litigation.

12. Class Counsel are well-equipped to understand the complexities and risks associated with Section 14 cases.

13. Class Counsel's compensation for services rendered in this Litigation was wholly contingent on the success of the Action. Class Counsel are seeking attorney's fees of one-third of the settlement, which equates to $9,166,667. These attorneys' fees have not been paid from any source to Class Counsel and have not been the subject of any prior request, or prior award, in any litigation or other proceeding.

14. Both Monteverde & Associates PC ("M&A") and Kahn Swick & Foti, LLC ("KSF") are boutique securities firms, and litigating this Action required the devotion of a significant amount of their finite resources and the foregoing of other opportunities. The Chart below summarizes the work performed by my firm in connection with the prosecution of this Action. My firm has accrued 3,846.90 attorney hours, representing a total lodestar of $2,907,215.00 during the pendency of the Action:

| PROFESSIONAL | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Juan E. Monteverde (Managing Partner) | 1,128.70 | $1,025.00 | $1,156,917.50 |
| Miles Schreiner (Senior Associate) | 1,160.90 | $850.00 | $986,765.00 |
| Beth Keller (Of Counsel) | 53.70 | $800.00 | $42,960.00 |
| David E. Bower (Of Counsel) | 111.50 | $800.00 | $91,987.50 |
| John Baylet (Associate) | 31.70 | $575.00 | $18,227.50 |
| Jonathan Lerner (Associate) | 664.60 | $525.00 | $348,915.00 |
| Jordan Steele (Associate) | 143.30 | $475.00 | $68,067.50 |
| Bejamin Vanderhyden (Associate) | 552.50 | $350.00 | $193,375.00 |
| **TOTALS** | **3,846.90** | | **$2,907,215.00** |

15. My firm's billing records are attached hereto as Exhibit 7. The lodestar was calculated based on my firm's regular hourly billing rates and was prepared from time records regularly prepared and maintained by my firm. The time reflected was reasonably and necessarily expended.

16. The hourly rates for my firm are the usual and customary hourly rates charged for our services in similar litigation. My firm determined the hourly rates after careful consideration, including a survey of the prevailing market rates charged for mergers and acquisitions and securities litigation. These rates are also in line with hourly rates accepted in this District. *Fleming v. Impax Laby's Inc.*, 2022 U.S. Dist. LEXIS 125595, at *28 (N.D. Cal. July 15, 2022) (approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and noting that such "billing rates [are] in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, at *102 (N.D. Cal. July 22, 2020) (approving hourly rates of $490 to $975 for partners and from $310 to $800 for non-partners); *Hefler v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 213045, at *39 (N.D. Cal. Dec. 18, 2018) (finding rates ranging from $650 to $1,250 for partners or senior counsel and from $400 to $650 for associates as reasonable); *see also Ziegler v. GW Pharm., PLC*, No. 21-cv-1019-

BAS-MSB, 2024 U.S. Dist. LEXIS 52979 (S.D. Cal. Mar. 25, 2024) (finding M&A's and KSF's hourly rates reasonable in less expensive Southern District of California).

17. Additionally, Class Counsel is seeking reimbursement of certain expenses incurred in connection with the Action. A summary of the expenses incurred by my firm for which we are seeking reimbursement is detailed below:

| CATEGORY | AMOUNT |
|---|---|
| Court Filing Fees (including *Pro Hac Vices*) | $1,673.00 |
| Courier, Overnight Delivery and USPS (including returned env.) | $3,840.13 |
| Court Transcripts | $40.95 |
| Consultant and Expert Fees | $98,441.00 |
| Deposition Transcripts and Expenses | $25,518.56 |
| eDiscovery Platform | $12,277.57 |
| Mediation Fees | $20,228.75 |
| Printer and Photocopies (including survey, depo exhibits, witness binders and chambers copies) | $4,478.56 |
| **TOTAL** | **$166,498.52** |

18. The expenses summarized above are supported by the books and records of my firm, which are prepared from expense vouchers, check records, or other documents, represent an accurate record of the expenses incurred in connection with this Litigation, and were reasonably necessary for the prosecution of this Action. Notably, Class counsel has excluded from its expense request the travel and lodging expenses incurred by M&A and KSF – a New York and New Orleans based firm – in prosecuting the Action. These expenses will be borne entirely by Class Counsel.

| | |
|---|---|
| 1 | 19. The declaration and billing records of Kahn Swick & Foti, LLC, the other Co-Lead |
| 2 | Counsel/Class Counsel firm in this action, are attached hereto as Exhibit 8. |
| 3 | 20. **As outlined therein and here, Class Counsel accrued a total 7,356 attorney and** |
| 4 | **support staff hours, representing a total lodestar of $5,748,037.50 to the present time, and Class** |
| 5 | **Counsel incurred a total of $325,088.72 in unreimbursed expenses in connection with this** |
| 6 | **Action.** |
| 7 | 21. Co-Lead Plaintiffs also seek reimbursement for the time and expenses they incurred |
| 8 | relating to their representation of the Settlement Class in this Action in the amount of $5,000 each |
| 9 | ($15,000 total). Attached hereto as Exhibits 4-6 are the Declarations of Co-Lead Plaintiffs Cecelia |
| 10 | Pemberton, Bruce Svitak, and Barbara Svitak. |
| 11 | 22. <u>Exhibits.</u> Attached hereto are true and correct copies of the following exhibits: |

| | | |
|---|---|---|
| 12 | **Exhibit 1:** | Comparable Cases Chart |
| 13 | **Exhibit 2:** | Firm Resume of Monteverde & Associates PC |
| 14 | **Exhibit 3:** | Firm Resume of Kahn Swick & Foti, LLC |
| 15 | **Exhibit 4:** | Declaration of Ceceila Pemberton |
| 16 | **Exhibit 5:** | Declaration of Bruce Svitak |
| 17 | **Exhibit 6:** | Declaration of Barbara Svitak |
| 18 | **Exhibit 7:** | Billing records of Monteverde & Associates PC |
| 19 | **Exhibit 8:** | Declaration and billing records of Kahn Swick & Foti, LLC |

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 2, 2025

                                            /s/ *Juan E. Monteverde*
                                              Juan E. Monteverde